# UNITED STATES DISTRICT COURT

for the

Southern District of California

**FILED**
6/5/2023
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY vyc DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
)   Case No. 23MJ8415
Black Samsung Galaxy Phone )
IMEI: 350578543187042 )
)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Sections 952, 960 | Importation of a Controlled Substance |

The application is based on these facts:

See Attached Affidavit of Homeland Security Investigations Special Agent Kellen Enz, incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

KELLEN A ENZ  Digitally signed by KELLEN A ENZ
Date: 2023.06.02 13:18:05 -07'00'

*Applicant's signature*

Special Agent Kellen Enz, HSI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
___telephone___ *(specify reliable electronic means)*.

*Judge's signature*

Date: 06/02/2023

City and state: El Centro, California         HON. LUPE RODRIGUEZ JR., U.S. MAGISTRATE JUDGE
*Printed name and title*

# ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

> Black Samsung Galaxy Phone
> IMEI: 350578543187042
> ("Target Device")

The Target Device is currently in the custody of Homeland Security Investigations – ASAC Calexico located at 2051 N. Waterman Avenue, Suite 100, El Centro, California 92243.

## **ATTACHMENT B**

ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Device for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of November 29, 2022, up to and including May 27, 2023.

a. tending to indicate efforts to import controlled substances from Mexico into the United States and destinations beyond;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, storage units, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.

# AFFIDAVIT

I, Special Agent Kellen Enz, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device(s):

> Black Samsung Galaxy Phone
> IMEI: 350578543187042
> ("Target Device")

as further described in Attachment A, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 952, 960 and 963 as further described in Attachment B. The requested warrant relates to the investigation and prosecution of Maribel Gisela LOPEZ-Garcia ("Defendant") for importing approximately 46.22 kilograms (101.89 pounds) of methamphetamine from Mexico into the United States. The Target Device is currently in the possession of the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations (ASAC Calexico), located at 2051 North Waterman Avenue, Suite 100, El Centro, California 92243.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Device, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

3. I have been employed as a Special Agent with Homeland Security Investigations (HSI) since January 2016. I am assigned to the HSI Office of the Assistant Special Agent in Charge, in Calexico, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

4. During my tenure with HSI, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California. Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry.

5. I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular telephones. A common tactic utilized by narcotics traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles and on persons that enter the United States at Ports of Entry such as the Calexico Ports of Entry. With respect to the importation of narcotics in this manner, I am aware that narcotics traffickers in Mexico frequently communicate with the individual ("the driver" or "the pedestrian") responsible with bringing the concealed narcotics into the United States or crossing the narcotics concealed on their person into the United States. These communications can occur before, during, and after the narcotics are imported into the United States. For example, prior to the importation, narcotics traffickers frequently communicate with the driver or the pedestrian regarding arrangements and preparation for the narcotics importation. When the importation is underway, narcotics traffickers frequently communicate with the driver or the pedestrian to remotely monitor the progress of the narcotics, provide instructions to the driver or the pedestrian, and warn accomplices about law enforcement activity. When the narcotics have been imported into the United States, narcotics traffickers may communicate with the driver or the pedestrian to provide further instructions regarding the transportation of the narcotics to a destination within the United States.

6. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s))

can and often do contain electronic evidence, including, for example, phone logs, contacts, voice and text communications, and data, such as emails, text messages, chats, and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the importation of narcotics may yield evidence:

    a.    tending to indicate efforts to import controlled substances from Mexico into the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States;

    d.    tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the Target Device; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

7.    On May 27, 2023, at approximately 8:58 a.m., Defendant, a Mexican citizen applied for admission into the United States from Mexico through the Calexico, California, East Port of Entry, via primary vehicle lane #5. Defendant was the driver of a 2013 Dodge Journey ("the vehicle") bearing Baja California, Mexico license plates. A Customs and

3

Border Protection Officer (CBPO) received a negative oral Customs declaration from Defendant who said that she was traveling to Indio, California to visit family. The CBPO tapped on the rear quarter-panel of the vehicle and observed a solid sound. The CBPO inspected the interior of the trunk of the vehicle and observed plastic heat-sealed packages containing a crystal substance concealed behind the side panels inside the cargo area. The CBPO referred Defendant and her vehicle to the secondary area for further inspection.

8. As the vehicle entered the vehicle secondary area, it was scanned using a Z-Portal vehicle x-ray machine. The Z-Portal operator observed anomalies within the vehicle's rear quarter-panels.

9. A Canine Enforcement Team was requested to assist in the secondary inspection area. The Human and Narcotic Detection Dog alerted to the presence of trained odors emitting from the vehicle.

10. Further inspection of the vehicle resulted in the discovery of 100 packages concealed within the vehicle's rear quarter-panels. The total combined weight of the packages was approximately 46.22 kilograms (101.89 pounds). A sample of the substance from one of the packages field tested positive for the characteristics of methamphetamine.

11. Defendant was placed under arrest at approximately 9:40 a.m. Defendant was advised of her Miranda rights. Defendant acknowledged understanding her Miranda rights and agreed to speak without the presence of an attorney.

12. During a post-Miranda interview, Defendant was shown the Target Device and claimed ownership of the device. Defendant stated she was hired by a person named "Gabriel" (last name unknown (LNU)) to transport an unknown quantity of drugs into the United States and was to be paid $2,000 U.S dollars. Defendant stated that this was her first-time transporting drugs on behalf of Gabriel. Defendant stated that Gabriel picked up her vehicle from her place of work in Mexicali, Mexico, loaded the narcotics into the vehicle, and then returned the vehicle to her work parking lot on the night before she crossed into the United States. I asked the Defendant how she communicated with Gabriel. The Defendant replied "WhatsApp." I asked the Defendant to show me her messages with

Gabriel. The Defendant entered her password into the Target Device, opened her WhatsApp message string with Gabriel, and handed me the Target Device. I scrolled to the top of the message string, which was dated, November 29, 2022. The first message I saw was the Defendant sending Gabriel a photograph of her vehicle's registration. I began to photograph the WhatsApp conversation between the Defendant and Gabriel, which included text messages and voice notes. As I photographed the conversation, the Defendant became upset and said she only wanted me to look at her conversation from the previous day. The Defendant said she did not give me permission to look at all her conversations with Gabriel. Once the Defendant revoked consent, I stopped my inspection of the Target Device and placed it back on the table. Below are translations from Spanish to English of the conversations I photographed prior to the Defendant revoking consent.

13. On December 1, 2022, Gabriel asked "What time do you go to work?" Defendant replied, "I go in at 4." Gabriel said, "We can put it in at 3:30."

14. On December 2, 2022, Defendant said, "They gave me 480 dollars. Just so you know." On December 3, 2022, Gabriel asked, "Ready?" Defendant replied, "Ya, they are in the vehicle here." Gabriel said, "If you are good, I'll send you a message early tomorrow."

15. On December 15, 2022, Gabriel wrote, "I'll see you tomorrow." Defendant asked, "What time?" Defendant sent a voice note. Gabriel replied "Ok, you have a trip Saturday." On December 16, 2022, there were four missed WhatsApp calls from Gabriel to Defendant, then Gabriel typed, "She took 30," followed by several voice notes. Defendant typed, "Please, the truck is here at the house." Gabriel replied, "Ok."

16. Based upon my experience and training, consultation with other law enforcement officers experienced in smuggling investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures, and other digital information are stored in the memory of the Target Device. Considering the aforesaid facts and my experience and training, there is probable cause to believe that the Defendant was

5

using the Target Device to communicate with others to further the importation of illicit contraband into the United States. Further, in my training and experience, traffickers may be involved in the planning and coordination of a smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the contraband. Based on my training and experience, it is also not unusual for individuals, such as the Defendant, to attempt to minimize the amount of times they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the Target Device for data beginning on November 29, 2022, up to and including May 27, 2023.

## METHODOLOGY

17.   It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored

that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

18. Following the issuance of this warrant, I will collect the Target Device and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

19. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

20. Defendant initially provided consent to inspect the Target Device. However, during my inspection of the Target Device, Defendant revoked her consent. I immediately ceased my inspection of the Target Device upon Defendant's revocation of consent.

//
//
//
//
//
//
//
//
//
//
//
//

# CONCLUSION

21. Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the Target Device will yield evidence of Defendant's violations of Title 21, United States Code, Sections 952, 960, and 963. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachment A and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

KELLEN A ENZ
Digitally signed by KELLEN A ENZ
Date: 2023.06.02 13:20:31 -07'00'
_____
Special Agent Kellen Enz
Homeland Security Investigations

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 2nd day of June, 2023.

_____  2:45 p.m.
Honorable Lupe Rodriguez, Jr.
United States Magistrate Judge

8

## ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

> Black Samsung Galaxy Phone
> IMEI: 350578543187042
> ("Target Device")

The Target Device is currently in the custody of Homeland Security Investigations – ASAC Calexico located at 2051 N. Waterman Avenue, Suite 100, El Centro, California 92243.

## **ATTACHMENT B**

### ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Device for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of November 29, 2022, up to and including May 27, 2023.

a.  tending to indicate efforts to import controlled substances from Mexico into the United States and destinations beyond;

b.  tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

c.  tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States;

d.  tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, storage units, load houses, or delivery points;

e.  tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.